ROBERTSON, Presiding Judge.
In September 1994, J.W.O. filed a complaint against C.A.P. (the “mother”), W.H.P. (the “husband”), and A.C.P. (the “child”), seeking a judgment declaring that he is the natural and legal father of the child. The complaint alleged that J.W.O. had cohabited with the mother and that the child was conceived during the period of cohabitation. The complaint further alleged that after the relationship between J.W.O. and the mother ended, the mother married the husband and the child was bom two months later. J.W.O. requested that the court grant him visitation and order him to pay child support. In December 1994, J.W.O. moved the court to order a blood test to determine the biological paternity of the child.
In February 1995, the guardian ad litem for the child filed a Rule 12(b)(6), Ala.R.Civ. P., motion to dismiss the ease on the ground that J.W.O. had no standing to establish his paternity. In April 1995, the trial court granted the motion to dismiss. We reverse and remand.
The standard for review of the grant of a motion to dismiss was set out by our Supreme Court in Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993):
“On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala.1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772 (Ala.Civ. App.1989). The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala. 1985); Hill v. Falletta, 589 So.2d 746 (Ala. Civ.App.1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala.1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).”
The trial court did not specify its reason for dismissing the case. However, because standing to bring the declaratory judgment action was the only argument presented to the trial court, we conclude that the only basis for the dismissal would have been a determination that J.W.O. lacked standing. Accordingly, we consider whether J.W.O. has standing under the Alabama Uniform Parentage Act, Ala.Code 1975, § 26-17-1 et seq., to establish his paternity.
In pertinent part, § 26-17-5 addresses the presumption of paternity as follows:
“(a) A man is presumed to be the natural father of a child if any of the following apply:
“(1) He and the child’s natural mother are or have been married to each other and the child is born during the marriage, ...
[[Image here]]
“(4) While the child is under the age of majority, he receives the child into his home or otherwise openly holds out the child as his natural child.
[[Image here]]
“(b) A presumption of paternity under this section may be rebutted in an appropriate action only by clear and convincing evidence....”
Section 26-17-6(b) specifies who may bring an action to determine the paternity of a child under circumstances applicable to this ease:
“Any interested party may bring an action at any time for the purpose of determining the existence or non-existence of the father and child relationship presumed under subdivision (4) or (5) or (6) of Section 26-17-5(a).”
J.W.O. asserts that he is an interested party because he “openly holds out the child as his natural child” under § 26-17-5(a)(4). The husband is presumed to be the father of the child under § 26-17-5(a)(l). However, *1006 under § 26-17-5(b) that presumption is re-buttable by clear and convincing evidence. This court has often recognized that the presumption of paternity is rebuttable. See, e.g., M.M. v. C.M., 600 So.2d 316 (Ala.Civ. App.1992); J.J.O. v. K.O., 591 So.2d 92 (Ala.Civ.App.1991); and S.T. v. C.T.T., 571 So.2d 1168 (Ala.Civ.App.1990).
Under the applicable statutes, it would appear that J.W.O. has standing under § 26-17-6 to attempt to rebut the husband’s presumed paternity under § 26-17-5(b). However, we also must consider the application of Ex parte Presse, 554 So.2d 406 (Ala.1989). In Presse, our supreme court reviewed a situation where the child was conceived and born during the marriage. The Court framed the issue as follows:
“Does a man claiming to be the father of a child conceived and bom during the marriage of the mother to another man have standing under the UPA [Alabama Uniform Parentage Act] to initiate an action to establish that he is the father of the child where the presumed father persists in the presumption that he is the father?”
554 So.2d at 411 (emphasis added). The facts in Presse were that during her marriage the mother had committed adultery with the man claiming to be the father, and the child was conceived as a result of the adultery. The child was born during the marriage, and when the marriage ended, the husband was awarded custody. The mother later obtained primary custody and eventually married the man who claimed to be the father. After their marriage, they sued to exclude the husband from the child’s life. The Court in Presse held that the man claiming to be the father did not have standing under the Uniform Parentage Act to establish paternity to the detriment of the legal father who had helped raise the child in the good faith belief that it was his natural child.
J.W.O.’s complaint alleges that he and the mother were cohabiting at the time of conception and that the husband and the mother did not know each other at the time the child was conceived. J.W.O. alleges that after he and the mother ended their relationship, the mother met and married the husband. The child was born some two months after the marriage. J.W.O. also alleged that he has made repeated efforts to contact the child and to establish a relationship, but that the mother and the husband have refused all such attempts.
In this case the child was not conceived during the marriage and within an intact family unit. The policy considerations militating against the arguments of the man claiming to be the father in Presse do not apply to J.W.O. We hold that Presse is distinguishable from the instant case and does not deprive J.W.O. of standing to establish paternity.[1]
Because we hold that J.W.O. has standing to establish paternity, we consider whether, when the allegations of the complaint are viewed most strongly in J.W.O.’s favor, he could prove any set of circumstances that would entitle him to relief. In determining this issue, we consider only whether he may possibly prevail. Nance, supra. It is evident that J.W.O. could present clear and convincing evidence that would show his paternity; thus, the trial court’s dismissal was error.
We recognize that the presumption of paternity is strong and the burden of rebuttal heavy. J.J.O., supra. However, we cannot hold, under the facts before us, that the presumption can never be rebutted. Such a holding would impair the court’s duty to ascertain the truth. “[T]he solemn and sacred duty of a trial judge ... is the development and establishment of the truth....” Brandes v. State, 17 Ala.App. 390, 391, 85 So. 824, 825 (1920).
We note further that an irrebuttable presumption could prevent the child from discovering his true biological father. Our Su *1007 preme Court has quoted the following with approval:
‘“In contrast to enforcement of a child’s right of a present or past support obligation, the establishment of the parent-child relationship is the most fundamental right a child possesses to be equated in importance with personal liberty and the most basic of constitutional rights.’ ”
Ex parte Martin, 565 So.2d 1, 3 (Ala.1989) (quoting Ruddock v. Ohls, 91 Cal.App.3d 271, 154 Cal.Rptr. 87, 91 (1979)).
Accordingly, we reverse the judgment of dismissal and remand this cause for further proceedings.
We are compelled to briefly address the misstatements of law in the dissents regarding the Alabama Supreme Court’s decision in Ex parte Presse. In Presse, the mother and Mr. Presse were married in 1973; they lived together thereafter as husband and wife; the child was born in 1977; and the Presses and the child continued to live together as a family unit until the divorce[2] in 1980. 554 So.2d at 408. “Presse [was] presumed to be the father because he was married to the child’s mother at the time the child was both conceived and born. § 26-17-5(a)(l).” 554 So.2d at 423.
The facts in this case are totally different from the facts in Presse; consequently, the dissents wrongfully accuse the majority of failing to follow the law as espoused in Presse. As Justice Maddox points out in his dissenting opinion in Presse, to hold otherwise under the facts in this case, we would have to “wittingly or unwittingly [refuse] to follow decisions of the United States Supreme Court that clearly hold that a natural father has a liberty interest in establishing and maintaining a relationship with his natural child. Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).” 554 So.2d at 419.
It defies common sense and judicial logic that a mother can live with a man, conceive a child in that relationship, then marry another man immediately before the child is born, and thereby estop the natural father from establishing and maintaining a relationship with his natural child. To follow the reasoning in the dissents would “[set] back the law regarding paternity issues 100 years, and the [dissents ignore] not only the law as it currently exists, but also all the facts of this ease as well.” 554 So.2d at 418.
REVERSED AND REMANDED.
YATES and MONROE, JJ., concur.
THIGPEN and CRAWLEY, JJ., dissent.

. Under the facts of this case, we do not infer that the trial court would have dismissed a complaint by the mother to establish J.W.O.’s paternity. Because we hold Presse distinguishable, we do not consider whether mutuality of remedy should afford J.W.O. the same standing to establish paternity, or whether deprivation of this right under these facts infringes on J.W.O.'s constitutional rights guaranteeing access to the courts and a remedy. Ala. Const, of 1901, Art. I, §§ 10 and 13.

. Custody of the child was initially awarded to Mr. Presse; later, custody was divided between the mother and Mr. Presse, with the mother having primary custody.