Cassandra J. Cupp ("the mother") appeals from a judgment entered by the Coffee Circuit Court awarding custody of Alexandria Paige Cupp ("the child") to Zachary K. Cupp ("the father"). We reverse and remand.
 Father's Motion to Dismiss
Before we address the merits of the mother's appeal, we must address the father's motion to dismiss the appeal. The father contends that the mother's appeal is due to be dismissed because the appeal is untimely; however, he incorrectly asserts that the mother's time for taking an appeal ran from the date the trial judge signed the judgment.
Rule 4(a)(1), Ala. R.App. P., provides: "[T]he notice of appeal required by Rule 3[, Ala. R.App. P.,] shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from." (Emphasis added.) The entry of judgment occurs when the circuit clerk files the judgment. Radenhausen v. Doss,819 So.2d 616, 618-19 (Ala. 2001). *Page 1012 
The judgment from which the mother appeals was signed by the judge on July 31, 2005, but it was not filed by the clerk of the trial court until August 4, 2006. The mother filed her notice of appeal on September 15, 2006, 42 days after the entry
of the trial court's judgment. Therefore, the mother's notice of appeal was timely filed, and we deny the father's motion to dismiss.
 Mother's Appeal
On June 16, 2003, the trial court divorced the mother and the father. The parties were awarded joint legal custody of their child, and the mother was awarded primary physical custody, with the father having specified visitation rights. On October 5, 2004, the court modified the divorce judgment, stating as follows:
 "Custody:
 "The parties shall share Joint Custody of [the] minor child . . . born June 3, 2001 with the Mother having Primary Physical Custody.
 "Visitation:
 "1. The Father shall have the following rights of visitation until such time as the minor child begins kindergarten:
 "a) In Odd-numbered years, he will have the minor child visit with him the months of January, February, June, July, October and November.
 "b) In Even-numbered years, the minor child will visit with the Father from January, February, June 10th through July 30th, September and December.
 "2. The Mother shall have unlimited access and visitation with the minor child during the minor child's visitation with the Father at her own expense.
 "3. There shall be an exception this year (2004) in that the Father, due to his prolonged absence from the child shall receive the months of November and December, November 1st through December 31st with the caveat that he shall spend one full day with the minor child in the state of Washington, in the Mother's hometown, with both Mother and minor child, to allow the Father and child to familiarize themselves with each other before flying back to Alabama.
 "4. He will forgo visitation with the minor child in the month of January in the year 2005 in consideration of receiving an extra month this year, 2004.
 "5. The foregoing visitation shall continue until such time as the minor child enrolls into Kindergarten at which time visitation shall revert to the Court's standard visitation schedule."
On December 22, 2004, the father filed a petition to modify the October 5, 2004, judgment. He alleged that, since the entry of the October 5, 2004, judgment, there had been a material change in circumstances. The father also sought temporary custody of the child pending a final hearing on his petition.
On January 5, 2005, the trial court granted the father's request for temporary custody pending the final hearing, and it awarded reasonable visitation rights to the mother pending the final hearing.
On January 18, 2005, the mother filed an answer to the father's petition; she also counterclaimed for sole custody of the child. Also on January 18, 2005, the mother filed a motion to set aside the temporary-custody order. The father answered the mother's counterclaim and responded to the mother's motion to set aside the temporary-custody order on January 20, 2005. *Page 1013 
The trial court held a final hearing on June 29, 2006, and it entered a judgment on August 4, 2006, in which it found:
 "(a) [that] there has been a material change in circumstances since the prior [judgment], which said change affects the welfare of the minor child; (b) [that] it is now in the minor child's best interest and welfare to modify the custody provisions as set out in the [October 5, 2004, judgment]; and (c) [that] a change in the custody provisions of the [October 5, 2004, judgment] will `materially promote' the child's welfare/best interests."
The trial court awarded primary physical custody to the father and awarded the mother visitation rights; the parties retained joint legal custody of the child.
On appeal, the mother argues that the trial court failed to apply the standard for modification of custody set forth inEx parte McLendon, 455 So.2d 863 (Ala. 1984), and that the father failed to meet his burden under McLendon.
She also argues that the trial court improperly gave the father custodial preference due to his having had pendente lite custody of the child.
Because the mother had been awarded primary physical custody in the October 5, 2004, judgment, the McLendon standard is applicable to this case.
 "In Ex parte McLendon, supra, our supreme court held that the proper standard to be applied in child-custody cases wherein a parent has either voluntarily forfeited custody or has lost custody due to a prior judgment is whether there has been a material change in circumstances since the prior judgment; whether a change in custody will materially promote the best interests of the child; and whether the benefits of the change in custody will more than offset the inherently disruptive effect caused by uprooting the child."
Barber v. Moore, 897 So.2d 1150, 1153
(Ala.Civ.App. 2004). "This standard creates a presumption in favor of the party who has custody of the child at the time of the filing of the modification motion." T.J.H. v.S.N.F., 960 So.2d 669 (Ala. 2006).
The mother's assertion that the trial court did not apply theMcLendon standard is incorrect. In its judgment, the trial court found that a material change in circumstances had occurred and that a change in custody would materially promote the best interests of the child. We conclude, however, that the mother correctly argues that the father failed to meet his burden under McLendon. There is insufficient evidence in the record to support the trial court's finding that a material change in circumstances that affected the best interests of the child had occurred since the entry of the October 5, 2004, judgment. See Hovater v. Hovater,577 So.2d 461, 465 (Ala.Civ.App. 1990).
Our review of the record reveals the following. After the divorce, the mother had resided in Washington and the father had resided in Alabama. On November 18, 2004, approximately six weeks after the October 5, 2004, judgment was entered, the mother left the child in Alabama with the father for the father's first extended period of visitation. At approximately the same time, the mother relocated from Washington to North Carolina in order to better facilitate the new visitation schedule. Upon her arrival in North Carolina, the mother initially moved in with her brother and his wife and child. However, the mother testified that she had planned on moving into her own apartment before the father's visitation period ended.
Approximately one month later, and less than three months after the entry of the October 5, 2004, judgment, the father filed his petition for modification. In his petition, he alleged that the mother, who had been living with her parents in Washington and had been purportedly going to school, *Page 1014 
had moved to North Carolina to live with her brother's family in a two-bedroom, one-bathroom apartment. The father alleged that he had learned that the mother's brother had received an eviction notice and that the mother would soon be without a home. The father also noted that the mother was not in school and was not employed. He alleged that he, on the other hand, was gainfully employed with a substantial income and had a three-bedroom, two-bathroom house where the child has her own room. The father noted that it would be dangerous to return the child to the mother because, he alleged, the child might become homeless.
The evidence presented at trial, however, did not support the father's allegations. In fact, the evidence at trial showed that the mother had begun working full-time on December 15, 2004, before the father filed his petition for modification. Further, the mother's brother had not been evicted from his apartment, and the mother actually moved into her own apartment in January 2005.
After a review of all the evidence in the record, there is insufficient evidence to show that "material changes that affect the child's welfare ha[d] occurred." fix parte Martin,961 So.2d 83 (Ala. 2006). There is insufficient evidence to conclude that the mother's move from Washington to North Carolina affected the child's welfare so as to constitute a material change. During the pendency of the father's petition, both the mother and the father had remarried, and both had had another child; however, there was insufficient evidence to indicate that either of the remarriages constituted a material change that affects the child's welfare. Further, although the father's income had increased and although he lives in a larger home than does the mother, there was no evidence to indicate that the mother could not sufficiently support the child. In fact, both she and her husband are employed full-time, and they live in a two-bedroom condominium.
There being insufficient evidence in the record to support a finding that a material change in circumstances that affected the child's welfare had occurred, we conclude that the trial court exceeded its discretion in modifying the October 5, 2004, judgment. We therefore reverse the trial court's judgment awarding custody to the father and remand this case to the trial court with instructions to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
PITTMAN, J., concurs in the result, without writing.